Good morning and may it please the Court, I'd like to start by addressing an unusual development in this case in that there has been voluminous intervening possibly dispositive case law that has issued from both this Court and the Supreme Court since the original petition was filed, with those cases mostly being Niz Chavez and this Court's 2021 Rodriguez decision. Now since the Rodriguez decision came out, there has essentially been an inter-circuit split with the development of this Court's Spagnol-Bastos, Gudillo-Villatoro, and Platero-Rosales cases that have been brought to the Court's attention through 28J letters. The three last cases I mentioned starting with Spagnol-Bastos are all fundamentally inconsistent with Rodriguez and the Supreme Court's Niz Chavez decision. They are irreconcilable and to the extent they are irreconcilable, Rodriguez must control because it was issued first and as Rodriguez notes, it was an issue of first impression in this circuit. Now Rodriguez dealt with the effect of the Niz Chavez decision's requirement for a single notice in Section 1229 Notice to Appear statute and what that means when there's a statutory cross-reference in a different section of the Immigration and Nationality Act to that statutory definition of a Notice to Appear. Rodriguez does not deal with jurisdiction. We understand that this Court's Pierre-Paul decision deals with jurisdiction and the regulatory definition of a Notice to Appear controls on that issue, but with respect to whether or not a statutory in absentia order can be issued when it cross-references the statutory definition of a Notice to Appear and the Notice to Appear that was issued is putative under the statutory definition, there can be no in absentia order as Rodriguez recognized and as the First Circuit recently recognized in the La Parra de Leon decision that was filed in a 28-J letter the other day. The reason for that is fairly simple. Niz Chavez simply stated that a single notice controls and because there's an order of operations in terms of whether or not 1229 A1 or A2 notice is sufficient, a 1229 A1 notice which is the Notice to Appear itself provides the initial time of the hearing, whereas a 1229 A2 notice comes second in time. It can only follow on the heels of a 1229 A1 notice. If there is no 1229 A1 notice, there cannot be a 1229 A2 notice and the First Circuit recognized that in its La Parra de Leon decision by looking at the definition of change. The statute says under A2 that a notice of hearing may notify an individual of a change in the time of proceeding. There is not a change when you go from zero to one because there is not a initial hearing that has been changed to a different date. A hearing does not get changed from December 7th or from no date to December 7th. It gets set on December 7th, whereas a hearing can be changed from December 7th to say December 31st. And because of that, this Court's Rodriguez decision faithfully applied Niz Chavez and it is controlling in this case. To the extent that Spagnol, Bastos, Udillo, Villatoro, and Platero-Rosales say otherwise, there's no basis. They are not distinguishable. They are not an extension. They are just wrong. Spagnol, Bastos does not mention Rodriguez or Niz Chavez once in the text of the decision. It is unclear if they were aware of the decision. From there, Udillo, Villatoro relies exclusively on Spagnol, Bastos for the idea that a notice to appear does not need to be statutorily compliant in order for an in absentia order to issue. There is no other citation that supports that aside from the Spagnol, Bastos citation. In Platero-Rosales, that's simply an application of Udillo, Villatoro, and Spagnol, Bastos. The that Rodriguez, it does not say that Rodriguez was incorrect or correct. It does not think about Niz Chavez. That discussion happens only in a single judge concurrence and when reading the concurrence, it is, it uses a lot of legal gymnastics to try and explain away the irreconcilable conflict between the Rodriguez decision and the Spagnol, Bastos. We've seen to me Chief Judge Richmond's perhaps principal point is Rodriguez didn't discuss what she thought was the relevant subsection of the statute. Now, the rule of orderliness comes into play in different ways and if you want to discuss that some more, that's fine, but I'm not asking you to, but that was her point that Rodriguez didn't address what was the issue before her and that is that an invalid consideration when you look at Rodriguez that it didn't discuss what she says and we may or may not agree with her of what is the relevant subsection of the statute. I believe, I appreciate the court's question. I don't believe that Rodriguez needed to discuss that because it applied the underlying rationale of Niz Chavez, which was that a single notice is necessary and if we think about Niz Chavez and the stop time rule and the effect of that, what it effectively means is that even if a non-citizen receives a notice of hearing under 1229A2 after being given a statutorily deficient notice to appear and even if they receive that one day after they get the statutory deficient notice to appear, then nonetheless, they are allowed to claim 10 years of physical presence in the United States 10 years later because there is no legal effect of that notice of hearing. It is void from the beginning and it has no legal significance and that's what the concurrence misses. To the court's point, it does have something to do with an order of operations issue because you cannot create something out of nothing and I would invite the court to think about whether or not if jurisdiction were not an issue, whether a notice of hearing issued without even putative notice to appear could support the issuance of an in absentia order because that is essentially what's at issue in this case. Under this circuit's precedent, jurisdiction is not an issue and there is not a valid notice to appear so then is a notice of hearing by and of itself sufficient and I don't think it can be. Now, even if a Rodriguez is not dispositive in this case, I would nonetheless note that the court still needs to consider whether or not the petitioner was entitled to actual notice, constructive notice, or no notice at all. We submit the petitioner was entitled to actual notice because he did provide an address. Now, there's a factual dispute as to whether or not he provided a correct address or an incorrect address. The only evidence that he provided an incorrect address is on the change of address form and the form I-830. As the government acknowledges in its response brief to the that it was actually physically read by the petitioner. It says that it could have been read to him and when you think about the error in this address, that it was a single letter where a H was transposed and a B was put in its place. If the person who drafted that did not catch the typo while reading it out loud, they would have read the correct address and there's no substantial evidence that that did not occur. The only evidence that exists is a signature, but that signature does not mean anything because there's no indication that the petitioner ever looked at that form again. This is fundamentally different from a misspelling on a notice to appear and it is distinguishable from the court's Mauricio Benitez decision because a notice to appear is the most important document in immigration proceedings. It is the only document that I'm around with you every single day and use it as a source of identity. It affects your rights and obligations and privileges, the types of release that you're eligible for, whether or not you're eligible for cancellation of removal or post-conclusion voluntary departure. The charges in that document are something that every immigration attorney will ask to see immediately and they will check the address and make sure it's correct. When someone is in immigration court, the immigration judge has to read the notice to appear to the individual unless that reading is explicitly waived. Unlike a change of address form, it's just very different. The change of address form, you'd never have a reason to look at it again and while I understand that a change of address form has to be an address for purposes of 1229 A1F, we can't say it's not. It has to be an address that if incorrect is capable of supporting an in absentia order. I would note that in this case, it's unusual because the change of address form was not filled out by the petitioner. It was filled out by his counterparty, his opposing party, the party trying to remove him and that seems concerning based off how small the error was. If he had, if the petitioner had gave the wrong house number or the wrong street or a totally different city or the wrong zip code even, then maybe, maybe that as a factual question would support finding that he provided the wrong address. But on this record, there's no way to say that he provided the wrong address and it's extremely important to note the immigration judge did not credit the statement that he provided simply because it was unsworn. He didn't find that it lacked credibility. He said I'm not going to consider it and that is fundamentally different. If it was found not credible and potentially self-serving, that would be a reason to discount the statement. But immigration courts and the BIA are supposed to consider all of the evidence before them under a totality of the circumstances and by failing to do that and by the BIA failing to address that issue and to correct that issue, the BIA abuses discretion by making an error of law as to the appropriate standard of the review of the evidence. And that is important because that single state, the fact that that statement was not included led the BIA to then conclude that the petitioner sent or actually received the mail and sent it back to the post office, which aside from being extremely unlikely, is unsupported by the record. It was not a finding made by the immigration judge and it is a key factual finding that the BIA had to make under matter of GYR, which is the BIA's 2001 case about constructive notice, noting that actual receipt is necessary for constructive notice to apply in the in absentia context. And this court cited that case with approval in its 2009 Navarette v. Lopez v. Barr case, where it stated the focus is on the receipt of the notice of hearing, not mailing. Under this court's precedent, there is absolutely no reason to hold that the respondent received constructive notice, even assuming he was not entitled to actual notice. Therefore, the only way that this in absentia order can stand is if the petitioner received no notice at all and did not need to receive notice. But the petitioner provided an address. He had an address on his notice to appear and granted he was in custody, but he also provided an address that had this one tiny error and neither the board nor the immigration judge used their discretion, which they were allowed to do, to correct that Scrivner's error. Because the INS acted as the petitioner's filling out that address form as evidenced by the fact that it was typed and on a form that was the INS's form clearly. The BIA abused its discretion by not simply correcting that error or by at least remanding to the immigration court for further findings to see if that was an error that deserved being corrected, as opposed to holding a strict liability approach and saying that this can support an in absentia order, which is arguably one of the most severe penalties possible in immigration outside of deportation. Let me ask you a question before your time runs out about the bag and baggage letter. Yes or no on the first part. I imagine that came up as a result of the FOIA request. That's where the bag and baggage came? That's correct. My understanding is that that is sent by ICE or some agencies such as that to the individual to say you're about ready to be removed, bring your stuff. That's what that letter does. If it's in the immigration file, I don't know if there's any evidence in this case of where ICE would have gotten the address other than all the other immigration materials relevant to your client. I mean, was there any discussion of where ICE traditionally would get the address to put on that bag and baggage form? There is not any discussion that I'm aware of, but I was thinking yesterday that the petitioner had to have a bond hearing, and in that bond hearing, he would have had to show that he was not a flight risk. Now, for some reason, those are not considered part of the record of proceeding in the removal hearing, but there's usually a statement or the bond hearing or just, you know, did a quick Google search and figured out what the actual city name was, but there's no evidence one way or another. Thank you. All right. Thank you, sir. Mr. Lawrence. Mr. Garland. No, that's your client. May it please the court. My name is Jesse Lorenz, and I represent the Attorney General of the United States. This court should deny this petition for review. At bottom, petitioner forfeited notice by failing to correct the misspelling of his mailing address. The statute makes it clear that this is the non-citizen's burden, and by failing to do it, he forfeited notice of his hearing. Because he forfeited notice, the board did not abuse its discretion in declining to reopen and rescind petitioner's in absentia order of removal for want of notice. This outcome is consistent with this court's decisions in Spagnol-Bastos, Giadid, Viettaro, and Platero-Rosales. Indeed, those decisions foreclosed petitioner's claim. What about the rule of orderliness, and Rodriguez really is the dominant case here, and these others are inconsistent with it? Well, I think the Chief Judge's concurrence in Platero-Rosales discusses that and resolves that issue. We don't resolve, I don't think, the orderliness issue. She says that it wasn't discussed in Rodriguez. Right. Now, certainly under orderliness, that's not, that doesn't matter. It decides what the issue is. So if Rodriguez actually stated something that is broad enough in an interpretive way, the fact it didn't mention a particular subjection may not matter. Well, Your Honor, I think that unlike Rodriguez, he did not miss his initial hearing. He was, he appeared at his initial hearing. He was still in immigration custody at that time and appeared, and that makes a difference because then notice, therefore, thereafter was under section two, section or paragraph two of 229, or I'm sorry, 1229A, which is not addressed in Pereira or Nez Chavez, and as Chief Judge Richards points out in her concurrence in Rodriguez. So the, the change of hearing is not the same as notice to appear, and those are held to a different standard. So here, they mailed it to his last known address, and because he didn't correct the misspelling, he, he forfeited notice. So I think, Rod, I think that the, the concurrence is, is dispositive of, of this issue, and Spagnol-Bastos should control. I imagine there was no way for this to be handled either at the immigration level here. My reaction to this, which is not in the evidence, so it's not going to be part of any kind of ruling, surely this change in letter, if it's, if the zip code was right, didn't matter, and I don't know if you get a postal inspector or whatever, and even if you did, whether that'd be very relevant evidence. Was there any effort to show, oh, give me a break, this didn't affect the delivery? Well, I mean, I, I think we're kind of bound by, by the record. I think if that had been tried, it'd be before your time. You've been back in the immigration proceedings. Right, and I don't, yeah, I don't deal with immigration proceedings, and we're kind of bound by the record, but I, I think it is interesting, the bag and baggage letter, he claims that that's the correct, correct address. If that was delivered to him, he was on notice of a removal order, and again, this is outside the record, but he would have been on notice of a removal order. I mean, that . . . We don't know it was delivered to him. We don't know the date of it. Well, that, that, see, that, I think, and, and I could be wrong, because it's unclear, and he doesn't really make the point below, but I would have, I would guess that the, well, first of all, the bag and baggage letter couldn't have happened before removal order. That is something that happens, you know, necessarily after removal order, but I, I thought, according to his own evidence, the returned envelope that he had would have been, um, I, I guess there's no way of, of, of, of, of drawing these together, but it, it seemed that the envelope that he had from INS would have been that bag and, baggage letter, and that kind of would have fit with the timeline that occurred afterwards, but again, we're bound by the record, and I, I don't know, I'm, I think I'm stepping, stepping outside of the scope of . . . This is more a statement for the future. I really do feel we're . . . I'm sorry, I didn't catch that. It's really more of a statement for the future, not applicable to this case. Right. I think that, I think that's fair. I apologize. I do wonder about how this case got so involved with a letter error, one letter error on this fairly complicated name, if the zip code was right, which I used to think that's all you needed was a zip code. I, I mean, that, that, Your Honor, that's personally my understanding too, but I, I'm, I'm not a, an attorney for the post office, so . . . That's good. I don't really know, um, but at the end of the day, the, the INA places a clear burden on him to correct any misspelling of the address, and, um, I, I think that the, the letter here, the forms here, the notification requirement for change of address, it put him on notice that he was required to, to, uh, contact both the Executive Office of Immigration Review, which is the Immigration Court, and the INS, which is, uh, the now DHS. Um, so I think that because he didn't correct that address, that, that's entirely dispositive of this issue. Uh, additionally, even assuming arguendo that petitioner did not forfeit notice, the Immigration Court provided petitioner proper notice of his hearing. Service of a notice of hearing by mail is sufficient, or it is mailed to the last address provided by the noncitizen. Here, the Immigration Court, um, mailed that hearing notice to petitioner's last known address, thus he was provided proper notice under the statute. Um, last, petitioner did not rebut the presumption of delivery by mail. Uh, again, this issue is kind of a, in addition to an additional dispositive reason. Uh, the record supports the agency's conclusion that the Post Office attempted to deliver the hearing notice, but that it was refused by someone at the address. The evidence petitioner attached to his motion does not change this result. The envelope represented with this motion is from INS, not the Immigration Court, and is postmarked several months after petitioner was ordered removed. Likewise, the bag and baggage checklist is an INS document and apparently was not created until after petitioner was ordered removed in absentia, as it notes that petitioner did not appear for removal, something that could not have happened until petitioner was ordered removed. Moreover, under both board and circuit precedent, it was appropriate for the agency to consider petitioner's diligence in deciding whether he regarding his own diligence, all petitioner claimed was that he checked his mailbox for two years before giving up. For this reason, it cannot be said that the board acted arbitrarily or comprehensively in concluding that petitioner's lack of diligence in pursuing his claim militated against a favorable exercise of discretion. Um, in sum, your honors, this court should deny this petition for review. At, at bottom, the board's conclusion that is entirely dispositive of this petition of review. Because petitioner forfeited notice, he cannot have his in absentia order reopened for lack of notice. This outcome is consistent with circuit precedent, which forecloses petitioner's many arguments. Uh, thus, this court should dismiss or deny this petition for review. Counsel, I'm injecting this. It wasn't raised by, uh, uh, your friend on the other side in his argument, but it is in the brief. It's not, uh, August of 21. It talks about the error of the IJ level and BIA in, in saying that, um, uh, respondent at that stage, the, uh, immigrant at that stage did not, the IJ stated that the immigrant had not provided any evidence, uh, uh, on, on various issues. But in fact, he had, he submitted a letter. Uh, it wasn't notarized. Uh, I don't know if you, you didn't discuss it. I don't remember how much of this was in your brief. Have you, uh, reviewed that? What do you make of this, uh, the IJ refusing to identify the letter that was submitted, I guess, in the motion to reopen, uh, from, from, uh, uh, the immigrant, uh, and saying different factual matters that it seems to me the IJ and the BIA did not consider? Well, I, I think, um, I think first of all, the board didn't rely on that aspect of the immigration judge's decision in, in denying the petition for review or denying his motion to reopen. The main issue is that he forfeited notice by not, uh, providing or correcting the misspelling. But to your point, Your Honor, I think, um, I mean, he does, he did provide a statement. The statement is, is fairly vague. It, it doesn't really explain, um, it doesn't ever claim that he really didn't receive notice. I mean, he says he didn't receive notice, but it doesn't really explain what steps he took. Um, it says kind of generically that he checked his mailbox for two years. Um, he doesn't say he provided a wrong address. But I will note, uh, the big, uh, the big thing about this is that it's, it's unsworn. So I think under, um, this court's case law, the, uh, immigration judge properly afforded it limited weight. But again, this didn't play into the board's ultimate determination that he forfeited notice by not correcting the misspelling of his address, which the statute, uh, firmly places on his shoulders. Thank you. Are there no further, uh, questions? Thank you, Your Honor. No, sir. I'd like to start by addressing, uh, counsel's statements that the petitioner had an obligation to notify the immigration court of a change in address. Uh, that is simply untrue. This court's 557 to understand that, uh, the requirement to notify the immigration court got transferred to the Secretary of Homeland Security. So there was no need for him to notify the immigration court at that time. Uh, as to the diligence issue, I would note that the petitioner filed a motion to reopen shortly after finding out he had a removal order. Uh, he filed the FOIA request, then learned about the removal order, and he requested a type of relief that was not dependent on Pereira. While he did also request the type of relief dependent on Pereira through a, uh, cancellation of removal, he had an approved I-130, was eligible for an I-601A to have a waiver of unlawful presence to be able to go consular process. He could have done that regardless of whether or not the Pereira decision came down. And so he was not just waiting for a change in Were you or your firm involved at that first stage motion to reopen? I was not, Your Honor. I got involved after the BIA decision, after the first BIA decision. But he was represented? He was. I would also note that with respect to the affidavit issue, uh, there is a requirement in the regulations for an affidavit for motions to reopen that are from the merits of proceedings. There is no such requirement for an affidavit in, uh, the context of an in absentia motion to reopen. In the same way, there is no need to show eligibility for relief to rescind and reopen an in absentia order. And that's because the in absentia order comes before there have ever been any decision on the merits. There's a much more pressing issue in getting those cases reopened when they are eligible to be reopened, uh, than is the case with a case that's been fully decided and briefed and, you know, all of the evidence presented. I would also like to address the postmark issue. Uh, counsel essentially is trying to provide a post hoc rationale for upholding the BIA's decision that was not provided by the BIA. Well, if you're talking about my inquiry with him, that's not going to be a rationale. And I, I'm not talking about that. I'm talking about, it was in his briefs too, about, uh, the postmark date of May of 2000, whereas the letter was supposedly mailed at the end of September or early October 1999. And how potentially, you know, it, that is consistent with, uh, the petitioner having returned the envelope to the post office as opposed to it just being rejected and sitting at the post office. Uh, I would note that there's two dates on that postmark. There's the date that it was returned, uh, or it was delivered back to the immigration court in October, even after being postmarked in May, indicating that the post office was dealing with severe delays. It's probably sitting in a processing center or a bucket somewhere. And so, it, that is not any sort of evidence that this court should rely on. It's not probative. It's not reliable. Uh, and it, it should not be considered. With respect to counsel's argument about the, the Spagnol-Bastos case being distinguishable from the Rodriguez case based off having missed the first hearing, uh, in the Spagnol-Bastos case but not the Rodriguez case, I would submit that that is a false distinction. Rodriguez had a notice to appear. He, it was sent to the wrong address. He never showed up. Uh, in, in this case, uh, whether or not there was an initial hearing, it, it simply does not matter if they did not receive notice because the statute says you did not receive notice. And so, whether or not the address was provided is irrelevant. Uh, so long as, or I guess, let me back up. In Rodriguez, uh, that case, it basically involved someone who was given a notice to appear that was sent to his ex-wife's house or possibly current wife's house where he was no longer living. He did not update his address despite knowing of his obligation to do so. It was not sent to him. Nonetheless, the court held that the notice was insufficient. He was already aware from having filed his applications with USCIS of having an ongoing obligation to update his address but that didn't matter in the same way that it shouldn't have mattered in Spagno-Bastos and it was, it relied on a false distinction between there being a difference between attending your first hearing and not attending your first hearing. And so, unless the court has any other questions, I'll rest. All right. Thank you. Counsel, both sides, we appreciate the briefing and your argument. This concludes the argued cases for this panel. All of the cases argued this week, in addition to the non-argument, will be taken under submission. Having said that, the panel stands adjourned.